■ Maria Correnti et al., Respondents, v Allstate Properties, LLC, Appellant. [832 NYS2d 594]—

In an action to recover damages for breach of a contract for the sale of real property, the defendant appeals from so much of an order of the Supreme Court, Nassau County (Parga, J.), dated September 2, 2005, as granted the plaintiffs' cross motion for summary judgment on their cause of action for the return of their down payment and dismissing the defendant's counterclaim to recover damages for breach of contract.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the plaintiffs' cross motion for summary judgment is denied, and the defendant's counterclaim is reinstated.

The plaintiffs failed to meet their burden of making a prima facie showing of entitlement to summary judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]). They entered into a contract with the defendant for the purchase of real estate in Merrick on or about April 13, 2005. In a handwritten addition to the contract, the parties agreed: "Seller represents that the premises are a legal (1) one family dwelling & detached 1 car garage and shall produce certificates of occupancy for all structures at the premises requiring same." A title search report dated April 26, 2005 indicated: "No Certificate of Occupancy issued for original structure erected prior to the enforcement of Certificate of Occupancy regulations circa 1928." The report further indicated that the Town of Hempstead began issuing certificates of occupancy in 1936. Attached to the report was a "Certificate of Completion" dated June 9, 1964 for an 11-foot by 12-foot addition to the dwelling. The certificate of completion provides, in part: "It is found that the installations at the site are substantially in compliance with the provisions of the Building Zone Ordinance and the N.Y. State Construction Code or the Building Code of the Town of Hempstead, as these provisions apply to the above noted project." On or about May 5, 2005 the plaintiffs' counsel received an addendum to the title report, with a "pre-date letter" dated May 2, 2005 annexed. The pre-date letter, from the Records Access Officer of the Nassau County Department of Assessment, indicated that the original property record card showed the dwelling and garage on the subject property to be approximately 10 years of age in 1938.

The defendant notified the plaintiffs by letter dated June 7, 2005, that it was scheduling a closing, "time of the essence," for June 30, 2005. The plaintiffs responded in a letter from counsel dated June 10, 2005, rejecting the proposed closing on the ground, inter alia, the defendant had failed to provide certificates of occupancy for all structures at the premises. The par-

ties thereafter attended the scheduled closing; the defendant did not provide any additional documentation regarding certificates of occupancy; the sale did not close; and the defendant, declaring the plaintiffs in breach of the contract, retained the plaintiffs' down payment as liquidated damages under paragraph 11 of the contract.

"When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations" (*Costello v Casale*, 281 AD2d 581, 583 [2001] [citations omitted]). The contract language utilized in *Costello* was more explicit than that utilized in the contract at issue herein. The parties in *Costello* provided for production of a certificate of occupancy or other required certificate of compliance, or evidence that none was required. That clause was interpreted as placing an affirmative obligation upon the seller to either produce a certificate of occupancy, or proof that no such certificate was needed.

Unlike the situation in *Costello (id.)*, where the seller had performed substantial renovations on the subject dwelling and had not obtained a certificate of occupancy for the dwelling as it then existed, the plaintiff herein was provided with the certificate of completion and the pre-date letter.

While the language utilized by the parties herein was somewhat less explicit than that in *Costello*, reading the contract as a whole, a practical interpretation of the clause at issue, and one that would give effect to the parties' reasonable expectations, is that the defendant was required to produce either a certificate of occupancy for all structures at the premises or proof that no such certificate was needed.

A triable issue of fact exists as to whether the defendant fulfilled its contract obligation through the documentation showing the dwelling and garage were approximately ten years of age in 1938, that the Town of Hempstead did not begin issuing certificates of occupancy until 1936, and that a certificate of completion was issued in 1964 for the addition to the residence. Rivera, J.P., Spolzino, Ritter and Angiolillo, JJ., concur.